CULPEPPER, Judge.
Plaintiffs are the owners of bars and restaurants in Evangeline Parish. They seek to enjoin the enforcement of an ordinance of the Evangeline Parish Police Jury which change the closing time for the sale of intoxicating liquors from 3:00 a.m. to 1:00 a.m. The district judge granted the injunction. Defendant appealed.
The issues involve the legality of the ordinance under LSA-R.S. 26:494 which provides in pertinent part:
“Except as limited by the provisions of this Chapter the various subdivisions of the state may regulate but not prohibit, except by referendum vote as provided by Chapter 3, this Title or by legally authorized zoning laws of municipalities, the business of wholesaling, retailing, and dealing in alcoholic beverages. However, no parish or municipality shall, in the exercise of its police power, regulate the business of selling such beverages more than is necessary for the protection of the public health, morals, safety, and peace.”
The ordinance in question was adopted by the Evangeline Parish Police Jury on November 13, 1972 for the purpose of regulating the sale of intoxicating liquors in the parish. Section 12 provides as follows :
“Section 12. Hours of Sale
“It shall be unlawful for any establishment granted a license or permit under this ordinance to be open or for any persons, firm or corporation to sell therein spiritous, vinous, or malt liquors or any alcoholic content of more than ^2 of 1% per volume between the hours of 1:00 o’clock a.m. and 7:00 o’clock a.m. on any date, and between the hours of 1:00 o’clock a.m. on Sunday and 1:00 o’clock p.m. on Sunday.”
The previous ordinance regulating these matters had been in effect since 1964 and provided a closing time of 3:00 a.m. instead of 1:00 a.m.
The first issue is whether the ordinance is invalid as constituting a “prohibition” of the selling of intoxicating liquors, rather than a “regulation”, within the meaning of LSA-R.S. 26:494, quoted above. In City of DeRidder v. Mangano, 186 La. 129, 171 So. 826 (1936), a city ordinance prohibiting music in barrooms and also prohibiting the employment of women as barmaids was held to be a “regulation” rather than a “prohibition”. The court explained the rationale of these provisions of the statute as follows:
“Obviously, the purpose of this proviso in the statute is to forbid the governing authorities of a parish or municipality to adopt such a stringent regulation of the retail liquor business as would amount to local prohibition, without a vote of the electors of the parish or municipality.”
City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239 (1954) involved an ordinance very similar to the one at issue in the present case, i. e., it prohibited the sale of intoxicating liquors between the hours of 1:00 a.m. and 6:00 a.m. on week days and between midnight on Saturdays and 6:00 a.m. the following Mondays. The court held this was a regulation rather than a prohibition, within the meaning of LSA-R.S. 26:494. See also City of *602 Shreveport v. Belk, 260 La. 1041, 258 So.2d 79 (1972) and Asbell v. Caddo Parish Police Jury, 292 So.2d 848 (2d Cir. 1974).
Under the above authorities, it is clear that the ordinance in the present case is a “regulation” rather than a “prohibition” within the meaning of LSA-R.S. 26:494. The trial judge in the present case correctly reached this conclusion on this issue.
The principal issue on appeal is whether the closing time of 1:00 a.m. constitutes a regulation which is “more than is necessary for the protection of the public health, morals, safety and peace,” within the meaning of the statute. With regard to this issue, we recognize the rule that ordinances adopted by local governing bodies are presumed to be valid and that the courts should not interfere with the exercise of the discretion of such bodies, nor substitute the courts’ judgment for that of the local governing authorities, except where those attacking the ordinance prove it is so clearly arbitrary and capricious as to be unreasonable and oppressive, City of Shreveport v. Conrad, 212 La. 737, 33 So. 2d 503 (1947); City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239 (1954); Akin v. Caddo Parish Police Jury, 234 So. 2d 203 (2d Cir. 1970), writs refused.
The facts are that for many years preceding 1964 Evangeline Parish had a 1:00 a.m. closing time. In 1964 the newly elected sheriff requested the police jury change the closing time to 3:00 a.m. because the 1:00 a.m. rule was not being enforced. The 3 o’clock rule had been in effect from 1964 until the time the present ordinance was adopted.
One of the principal advocates and supporters of the new ordinance is Dr. Frank Savoy, Jr., who has been the coroner of Evangeline Parish for many years. He testified that from his experience in having to investigate fatal automobile accidents, it was his opinion that 95% of all such accidents which occurred in the “wee hours” of the morning were caused by drinking drivers. He stated that after the 3 o’clock closing time was adopted in 1964, these alcohol-related fatal accidents became a major problem.
Dr. Savoy testified further that shortly before the new ordinance was adopted, there were two hit and run accidents after 1:00 a.m. resulting in fatalities. The principals of different high schools and other interested citizens consulted with Dr. Savoy as to remedial action. The doctor and others met informally with the police jury and recommended the closing time be returned to 1:00 a.m. After these discussions with Dr. Savoy and others, the jury adopted the new ordinance at its meeting on November 13, 1972.
The plaintiffs and other owners and employees of various bars and places of business which sell intoxicating liquors testified that if the closing time remains at 1:00 a.m. they will lose a substantial part of their business. Generally, they testified that most of their sales of intoxicating liquor are after 12:00 a.m. and most people continued to drink until at least 3 :00 a.m. Since the bars in the city of Ville Platte, the largest city in Evangeline Parish, as well as the bars in the adjoining parishes of St. Landry and Allen, remain open after 1:00 a.m., the plaintiffs testified their patrons would simply leave at 1:00 a.m. and go to these other establishments where they could continue to drink. Although the testimony of plaintiffs shows that the longer their bars remain open, the more their customers drink, and the more intoxicated they become, plaintiffs even advanced the theory that it is more of a traffic hazard to close at 1:00 a.m., because their customers leave at 1:00 a.m. and drive on strange roads to other bars and return in an intoxicated condition.
Several state troopers testified. Generally, their testimony is to the effect that before midnight approximately 55% of traffic violations involve drinking drivers, but that after midnight 90% or more are caused by the consumption of alcohol, and that the later the hour the higher the percentage of alcohol-related accidents.
*603 In his written reasons for judgment, the district judge states that despite the testimony and the opinions of the coroner and the state troopers, the actual statistics of the state police for the years 1970-1972 show that only 63 persons were arrested for drunken driving and that of these only five were arrested between 1:00 a.m. and 5:00 a.m. The judge also refers to the statistics on fatal accidents from 1970 through the time of the trial in 1973, which, according to the accident reports, show that of 46 traffic fatalities only 12 involved “drinking” drivers and 8 involved “drunk” drivers, and that all fatalities occurred during the daytime or evening hours with the exception of one which was after 1:00 a.m.
However, the testimony of the state troopers explains that these statistics do not show the complete picture. For instance, in hit and run accidents there is no opportunity to test the driver for drinking. In single vehicle accidents where the driver was alone and killed, usually no tests for alcohol were made. Also, in many lesser traffic offenses, such as speeding, weaving on the highway, crossing yellow lines, etc., no arrests are made, even though the driver is found to be drinking.
But the question is not whether the court should rely on these statistics from the records of the state police, or on the opinions of the coroner and state troopers. The issue here is whether the members of the police jury abused their discretion in deciding it was necessary for the protection of the public health and safety to change the closing time from 3:00 a.m. back to 1:00 a.m. We have no difficulty in concluding the evidence is not sufficient to show an abuse of discretion. On the other hand, the evidence as a whole amply supports the jury’s exercise of discretion in this matter.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the Evangeline Parish Police Jury rejecting the demands of the plaintiffs at their costs. All costs, both in the trial and appellate courts, are assessed against the plaintiffs.
Reversed and rendered.
WATSON, J., concurs and assigns written reasons.